IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
Civil Action No. 4:24-cv-3141

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | |
| v. | **COMPLAINT** |
| LINCOLN PUBLIC SCHOOLS, | |
| Defendant. | |

## I.      INTRODUCTION

1.      The United States files this action against Defendant Lincoln Public Schools (LPS) to enforce Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-34, and its implementing regulation, 28 C.F.R. Part 35.

2.      LPS unlawfully discriminates against qualified individuals with disabilities by denying them an equal opportunity to access a benefit of LPS's educational program—the opportunity to attend their neighborhood elementary and middle schools and choose their high school.  Students believed to need American Sign Language (ASL) are foreclosed from attending their neighborhood schools or participating in "high school choice," a program that allows students to apply to attend the LPS high school of their choice, which includes specialty high schools with, for example, STEM programs.  These programs are benefits available to students without disabilities.  While select students believed to need ASL may attend electives at non-cluster schools, such limited access comes with costly transportation burdens and is not equal to the access enjoyed by students without disabilities.

3.      The United States alleges that by relying on its cluster school policy, LPS operates its program in a manner that discriminates against qualified individuals with disabilities and their parents.  LPS's cluster school policy is unnecessary to provide aids, benefits, and services that are as effective as those provided to others.  By following this policy, LPS fails to provide effective communication to some deaf and hard of hearing students.  LPS also harms

such students' parents who incur transportation and other costs because of the cluster school policy.

4.      The United States alleges that LPS's cluster school policy denies individuals with disabilities and their parents full and equal enjoyment of its services in violation of Title II of the ADA, 42 U.S.C. §§ 12131-34, and its implementing regulation, 28 C.F.R. Part 35.  All conditions precedent to the filing of this Complaint have occurred or been performed.  *See* 28 C.F.R. pt. 35, Subpt. F.

## II.      PARTIES

5.      Plaintiff is the United States of America.

6.      Defendant LPS is a public entity within the meaning of Title II, 42 U.S.C. § 12131(1)(B) and 28 C.F.R. § 35.104.  LPS is a service, program, or activity of Lincoln, Nebraska's public education program under 42 U.S.C. § 12132 and 28 C.F.R. § 35.102(a).

## III.      JURISDICTION AND VENUE

7.      This Court has jurisdiction of this action under 29 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 12133.

8.      This Court has the authority to grant the relief sought pursuant to 28 U.S.C. §§ 2201- 02 and 42 U.S.C. § 12133.

9.      The Department of Justice is responsible for administering and enforcing Title II and its implementing regulation.  42 U.S.C. § 12133; 28 C.F.R. Part 35, Subpart F.  The United States, through the Department of Justice, has fulfilled all conditions precedent to filing of this action.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the claims alleged here occurred in Lincoln, Nebraska, in the District of Nebraska.

## IV.      FACTUAL ALLEGATIONS

A.      **LPS's Deaf and Hard of Hearing Cluster School Policy is Discriminatory**

11.      Since 2012, LPS has placed students who are deaf or hard of hearing who are

believed to need ASL interpretation at a cluster elementary school, middle school, or high school.

12.     LPS created the cluster school policy for deaf or hard of hearing students believed to need ASL for perceived administrative benefits.  LPS does not permit students to choose to attend their neighborhood school with an ASL interpreter.

13.     LPS employs freelance interpreters as needed.  A freelance interpreter hired by LPS could be deployed to a neighborhood school.  Yet LPS has generally refused to place ASL interpreters at neighborhood schools.

14.     Besides providing ASL interpretation for all classes, the cluster schools also provide deaf and hard of hearing students with regular access to a Teacher for the Deaf and Hard of Hearing (TDHH), who provides deaf and hard of hearing students with additional academic support.  TDHH services vary depending on the child's needs, but generally include individual sessions or small group sessions aimed at improving English language skills.

15.     Students who have hearing disabilities and need only limited services from a TDHH may stay at their neighborhood schools where a traveling TDHH is available for some portion of the week.

B.     **LPS Violates the ADA's Equal Opportunity Mandates by Relying on its Cluster School Policy**

16.     The United States has received complaints alleging that LPS's reliance on its cluster school policy discriminates against qualified students with disabilities.

**Student A**

17.     Student A is deaf and needs ASL interpretation to participate in and benefit from LPS's services, programs, or activities.  Student A began kindergarten at LPS in 2019.  Student A's parents enrolled Student A at her neighborhood school located blocks from their home, with Student A's sister and Student A's neighborhood friends.

18.     In 2019, LPS denied Student A's parents request for Student A to attend her neighborhood school.

19.    Instead, LPS placed Student A in a cluster school.

20.    Soon after, Student A's parents successfully appealed the cluster school placement under the Individuals with Disabilities in Education Act (IDEA) (20 U.S.C. § 1415) on grounds that the "stay put" provision of IDEA required that unless the parents and the school district otherwise agree, the placement in the last agreed-upon Individualized Education Program (IEP) remains in effect until disputes are resolved. *See* 20 U.S.C. § 1415(j).   As a result, LPS changed Student A's placement to her neighborhood school.

21.    In spring of 2020, LPS provided virtual education to students during the COVID-19 pandemic.  During this time, all deaf and hard of hearing students received virtual instruction from the cluster program for core classes.

22.     Beginning in 2021, LPS required Student A to attend the cluster school program. Student A's parents could not appeal based on the IDEA's "stay put" provision because Student A's last agreed upon placement was the virtual program, which no longer existed.  Since then, Student A has been denied the educational opportunity provided to her nondisabled classmates to attend their neighborhood school close to home and with their siblings and neighborhood friends.

23.    Between 2021-2022 Student A received TDHH services at the cluster school.

24.    In spring 2022, LPS and Student A's parents agreed that Student A does not need TDHH services because she was performing at or above grade level.

25.    Attending the cluster school is burdensome for Student A.  She has been forced to travel up to 90 more minutes to commute to and from school each day.

26.    Student A's parents want her to attend her neighborhood school, like her sister, and the children who live in their community without disabilities.

27.    Student A is enrolled in her neighborhood school for the 2024-2025 school year.

**Student B**

28.    Student B has Neurofromatosis type 2, which causes benign tumors that affect Student B's hearing.  Student B needed Communication Access Real-time Translation (CART) and other services to access LPS's educational benefits.  For a period, LPS provided CART to

Student B by typing what was said and projecting the typed text on a screen.  Student B's other services included closed-captioning, exchanging electronic notes, and talk to text technology.

29.      In Spring 2021, Student B temporarily lost her hearing.

30.      The following school year, LPS placed Student B at the cluster school with an ASL interpreter for the 2021-2022 school year, her senior year in high school.

31.      Student B neither uses nor understands ASL.

32.      Student B did not want to miss the socio-emotional benefit of attending her senior year at her neighborhood school with the friends and peers she had gone to school with since ninth grade.

33.      Student B successfully appealed LPS's proposed placement at the cluster school, but she missed the first three weeks of school while her parent contested the placement.

34.      Student B's parent missed work while retaining and meeting with her attorney to contest LPS's placement decision for Student B.

### Student C

35.      Student C is hard of hearing and needed ASL interpretation to access LPS's educational program and services.

36.      Student C attended the cluster schools during while enrolled in LPS.

37.      Student C graduated from LPS in 2023.

38.      Student C was required to attend a cluster school that did not offer elective courses in his chosen career field.  Because of this, he was denied the opportunity to choose a high school that offered elective courses in his chosen career field.

39.      Instead, LPS allowed him only limited participation in the "high school choice" program.  To take elective courses in his chosen career field, he had to drive twenty more minutes twice a week during the 2021-2022 and 2022-2023 school years to attend a different high school that offered these courses.

40.      Student C was harmed by LPS's cluster school policy.

41.      Because LPS refused to provide ASL services at the school offering Student C's

desired electives, Student C incurred logistical and financial burdens that were not imposed on students without disabilities.

**C.**     **<u>LPS Fails to Provide Effective Communication to Certain Deaf or Hard of Hearing Students</u>**

42.     LPS applies its cluster school policy to all students believed to need ASL without conducting an individualized assessment that considers whether a cluster school placement is necessary or equitable by considering, for example, whether students understand ASL or whether a student would benefit from specialized services offered at the cluster schools.

43.     LPS's cluster school policy denies effective communication for some students because it mandates ASL at the cluster school and does not consider whether the auxiliary aids or services provided are effective for each student subject to the policy.

**Student A**

44.     When Student A attended her neighborhood school from 2019 to 2021, LPS provided ASL interpretation for some of her classes, but not for homeroom and her elective classes.

45.     During this period, Student A experienced discomfort and fatigue because she lacked an ASL interpreter for some of her classes and Student A was unable to fully benefit from her education and communicate with her peers.

46.     LPS denied Student A effective communication at her neighborhood school for homeroom and specials.

**Student B**

47.     LPS failed to provide Student B effective communication by requiring students perceived to be deaf to use ASL, an auxiliary aid or service that Student B does not understand. LPS proposed placing Student B at a cluster school during her senior year with an ASL Interpreter, where Student B would have lacked access to her curriculum each day, because she

did not understand or use ASL.  Prior to LPS applying its cluster school policy to Student B, LPS had been providing effective communication through CART, closed-captioning, exchanging electronic notes, and talk to text technology.

48.    LPS insisted on providing ASL even after a successful surgery in July 2021 restored some of Student B's hearing.  By providing Student B with an ineffective auxiliary aid or service, LPS failed to take appropriate steps necessary to provide Student B with effective communication.  As a result, Student B missed the first three weeks of school while her parent contested LPS's proposed placement, rather than use ASL, an auxiliary aid or service she does not understand.

### D.  LPS Fails to Provide Equal Services to Parents Because of the Known Disabilities of Their Children

49.    Student A's parents experienced discrimination because of their relationship with Student A.  Because LPS refused to provide ASL for all educational services at Student A's neighborhood school, Student A's parents incurred the additional logistical, social, and financial burden of driving their child to the cluster school that takes up to thirty minutes each morning instead of Student A's neighborhood school, which is within walking distance of their family's home.

50.    Student A's parents also incurred the burden of taking their children to different schools and attending different schools for school open houses and parent teacher conferences, and they were denied the benefit of having their children attend the same school together and with their neighborhood friends.

51.    Student A's parents paid a retainer to Student A's attorney to contest her placement at the cluster school.

52.    Student B's parent experienced discrimination because of their relationship with Student B.  Student B's parent missed work and lost income during meetings with the school and Student B's attorney to contest Student B's placement at the cluster school.

## VII. CAUSE OF ACTION

### Disability Discrimination in Violation of Title II of the ADA

### 42 U.S.C. §§ 12131-34, 28 C.F.R. Part 35

53.     The United States incorporates the preceding paragraphs of this Complaint as if set forth in full below.

54.     LPS is a public entity subject to Title II of the ADA. 42 U.S.C. § 12131(1)(B); 28 C.F.R. § 35.104.

55.     LPS discriminates against qualified individuals with disabilities, because of such disabilities, by excluding them from participating in and denying them the benefits of its services, programs, or activities in violation of Title II of the ADA, 42 U.S.C. §§ 12131-34, and its implementing regulation at 28 C.F.R. Part 35 by:

a.  Excluding qualified individuals with disabilities from the opportunity to participate in its services, or denying individuals with disabilities the benefits of its services, 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a),(b)(1)(i);

b.  Denying qualified individuals with disabilities an equal opportunity to participate in or benefit from any aid, benefit, or service provided to others, 28 C.F.R. § 35.130(b)(1)(ii);

c.  Providing different or separate aids, benefits, or services to individuals with disabilities unless doing so is "necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others," 28 C.F.R. § 35.130(b)(1)(iv);

d.  Failing to take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others, 28 C.F.R. § 35.160(a)(1);

e.  Failing to provide "appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, an equal opportunity to participate in, and enjoy the benefits of [its] services, programs, or activit[ies]," 28 C.F.R.

8

§ 35.160(b)(1);

    f.   Excluding or otherwise denying equal services, programs, or activities to an individual because of the known disability of an individual with whom the individual is known to have a relationship or association, 28 C.F.R. § 35.130(g).

56.    The individuals named above, and others, are qualified individuals with under Title II of the ADA and meet the essential eligibility requirements to participate in LPS's services, programs, or activities.  42 U.S.C. § 12131(2).  They have been and remain harmed and aggrieved by LPS's discriminatory actions.

57.    LPS had knowledge that there was a significant likelihood that its reliance on its policy that places students believed to need ASL in cluster schools did not comply with the ADA, but LPS failed to implement necessary corrective measures and continues to discriminate against individuals with disabilities.

## V.    PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court:

A. Grant judgment for the United States and declare LPS violated Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation at 28 C.F.R. pt. 35.

B. Enjoin LPS, its officers, agents, employees, and all other persons and entities in active concert and participation with it from excluding individuals with disabilities from participation in or denying them the benefits of its services, programs, or activities, or otherwise subjecting individuals with disabilities to discrimination, including by:

    i.   Denying qualified individuals with disabilities the opportunity to participate in or benefit from LPS's aids, benefits, services, or programs, 28 C.F.R. § 35.130(a), (b)(1)(i);

    ii.   Denying qualified individuals with disabilities an equal opportunity to participate in or benefit from any aid, benefit, or service provided to others, 28 C.F.R. § 35.130(b)(1)(ii);

    iii.   Providing different or separate aids, benefits, or services to individuals

with disabilities unless doing so is "necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others," 28. C.F.R. 35.130(b)(1)(iv).

C. Order LPS to take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others, 28 C.F.R. § 35.160(a)(1).

D.  Order LPS to provide "appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, an equal opportunity to participate in, and enjoy the benefits of [its] services, programs, or activit[ies]," 28 C.F.R. § 35.160(b)(1).

E.  Enjoin LPS from excluding or otherwise denying equal services, programs, or activities to an individual because of the known disability of an individual with whom the individual is known to have a relationship or association, 28 C.F.R. § 35.130(g).

F. Award compensatory damages to all aggrieved individuals for injuries caused by the ADA violations alleged in this Complaint, pursuant to 42 U.S.C. § 12133; and

G. Order such other appropriate relief as the interests of justice may require.

Respectfully submitted this 15th day of August 2024.

KRISTEN CLARKE, Assistant Attorney General Civil Rights Division

REBECCA B. BOND, Chief


/s/*Charlotte Lanvers*
ELIZABETH S. WESTFALL, Deputy Chief
CHARLOTTE LANVERS, Trial Attorney
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530