IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:24CV3141 |
| v. | |
| LINCOLN PUBLIC SCHOOLS, | MEMORANDUM AND ORDER |
| Defendant. | |

In this action (Filing No. 1), the government alleges defendant Lincoln Public Schools ("LPS") has discriminated against qualified individuals with disabilities in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. In particular, the government states LPS denies students believed to need American Sign Language ("ASL") services an "equal opportunity . . . to attend their neighborhood elementary and middle schools and choose their high schools" through their "cluster school policy." That policy, which dates back to 2012, places students who are deaf or hard of hearing at "cluster" schools—where ASL interpreters and Teachers for the Deaf and Hard of Hearing ("TDHH") are provided—to alleviate administrative burdens.

According to the government, that policy means that LPS students needing ASL interpretation do not have the choice other students have to attend their neighborhood school or select a high school based on specialized programming or other preferences. Despite LPS's ability to employ freelance interpreters at these other schools, the district has "generally refused" to do so. And although "students believed to need ASL may attend electives at non-cluster schools, such limited access comes with costly transportation burdens and is not equal to the access enjoyed by students without disabilities." As the government details, multiple families have filed complaints regarding the discrimination their children have faced as deaf and hard of hearing students affected by the cluster policy.

Now before the Court is the parties' Joint Motion for Entry of Consent Decree (Filing No. 3) submitted the same day as the government's Complaint. The parties represent that they "have resolved all issues in this matter by the proposed Consent Decree" attached to their motion (Filing No. 3-1). They ask the Court to approve and enter that proposed consent decree which broadly requires LPS to (1) abide by applicable ADA regulations, (2) terminate the cluster policy and reconsider the placement of students previously subject to the policy, (3) adopt a written non-discrimination policy, (4) designate an ADA Coordinator, (5) train current and future relevant staff on pertinent issues, (6) pay individuals identified to have suffered damages from the alleged discrimination a combined amount of $12,000, and (7) provide information to the government necessary to enable monitoring of its compliance. The proposed consent decree is set to last for three years.

"Although the law favors settlements, federal courts in adopting consent decrees are not mere 'recorder[s] of contracts from whom parties can purchase injunctions.'" *Angela R. ex rel. Hesselbein v. Clinton*, 999 F.2d 320, 324 (8th Cir. 1993) (alteration in original) (quoting *Loc. No. 93, Int'l Ass'n of Firefighters. v. City of Cleveland*, 478 U.S. 501, 525 (1986)). Unlike a private settlement agreement, "a consent decree is subject to court approval before it can take effect." *Donaghy v. City of Omaha*, 933 F.2d 1448, 1459 (8th Cir. 1991). That approval requires the Court to find the consent decree "spring[s] from and serve[s] to resolve a dispute within the [C]ourt's subject matter jurisdiction," "come[s] within the general scope of the case made by the pleadings," and "further[s] the objectives of the law upon which the complaint was based"—in this case, the ADA. *Id.* (quoting *Local No. 93*, 478 U.S. at 525). The Court must also deem the parties' agreement to be fair, reasonable, and adequate. *See EEOC v. Prod. Fabricators*, *Inc.*, 666 F.3d 1170, 1172 (8th Cir. 2012).

Based on its careful review of the allegations and agreement in light of these considerations, the Court finds the proposed consent decree warrants approval and entry. First, the consent decree clearly addresses a matter within the Court's subject-matter

jurisdiction as the parties' dispute revolves around a policy that is purported to violate the ADA and its implementing regulations. *See* 28 U.S.C. § 1331; 42 U.S.C. § 12132. The consent decree also comes within the scope of the Complaint's allegations and furthers the goals of the ADA by ending an allegedly discriminatory public policy, improving equal access to public educational services for students who are deaf and hard of hearing, and ensuring future compliance with important non-discriminatory principles. *See* 42 U.S.C. § 12101 (stating the purpose of the ADA is to, among other things, ensure "the Federal Government plays a central role in" enforcing "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities").

The parties' consent decree also appears to be fair, reasonable, and adequate. The parties' filings and agreement demonstrate they negotiated "in good faith and at arm's length" and will continue to do so in carrying out the provisions of the decree. *United States v. BP Amoco Oil PLC*, 277 F.3d 1012, 1019-20 (8th Cir. 2002). Therefore,

IT IS ORDERED:

1. The parties' Joint Motion for Entry of Consent Decree (Filing No. 3) is granted.
2. The parties' Consent Decree will be entered separately.
3. This matter will be closed for statistical purposes. The Court will retain jurisdiction of this action for three years after the entry of the Consent Decree to the extent necessary to enforce compliance with its terms.

Dated this 11th day of September 2024.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge