IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **4:24CV3141** |
| v. | |
| LINCOLN PUBLIC SCHOOLS, | **CONSENT DECREE** |
| Defendant. | |

## I.    INTRODUCTION

1.    This Consent Decree resolves the above-captioned civil action brought by the United States against defendant Lincoln Public Schools ("LPS") under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-34, and its implementing regulation, 28 C.F.R. Part 35.

2.    The United States brought this lawsuit based on complaints alleging LPS unlawfully discriminates against qualified deaf or hard of hearing individuals by denying them an equal opportunity to attend their neighborhood elementary and middle schools ("neighborhood-school program") and choose their high school ("high-school-choice program"), programs that students without disabilities may access as a right.  The United States further alleged that some students requiring American Sign Language ("ASL") interpretation may attend electives at non-cluster schools, but such access comes with costly transportation burdens and is unequal to the access enjoyed by students without disabilities.

3.    After completing a comprehensive investigation, the United States alleges that by applying a cluster-school policy LPS operates its program in a manner that discriminates against qualified individuals with disabilities and their parents/guardians. The United States further alleges that this cluster-school policy does not consider the

individualized needs of deaf and hard of hearing students, denies such students an equal opportunity to participate in LPS's neighborhood-school and high-school-choice programs, and is unnecessary to provide aids, benefits, and services that are as effective as those provided to others. The United States further alleges LPS harms some students' parents/guardians who incur transportation and other costs as a result of the alleged cluster-school policy.

4.     The United States alleges LPS's cluster-school policy denies individuals with disabilities and their parents/guardians full and equal enjoyment of its services in violation of Title II of the ADA ("Title II"), 42 U.S.C. §§ 12131-34, and its implementing regulation, 28 C.F.R. Part 35. The United States issued its findings of fact and conclusions of law in a Letter of Findings on February 14, 2024.

5.     On February 14, 2024, concurrent with the filing of a proposed Consent Decree (Filing No. 3-1), the United States filed a Complaint (Filing No. 1) alleging that LPS violates Title II, 42 U.S.C. §§ 12131-34, and its implementing regulation, 28 C.F.R. Part 35, by requiring deaf and hard of hearing students who require ASL interpretation to attend a cluster school serving similar students.

6.     This Consent Decree is entered into between the United States and LPS (the "Parties"), and resolves the allegations set forth in Paragraphs 2-4 above. By entering into this agreement, LPS does not admit to any of the allegations in Paragraphs 2-4 and does not admit any wrongdoing.

## II.     PARTIES AND JURISDICTION

7.     Plaintiff is the United States of America.

8.     Defendant LPS is a public entity within the meaning of Title II. *See* 42 U.S.C. § 12131(1)(B); 28 C.F.R. § 35.104. LPS is a service, program, or activity of

Lincoln, Nebraska's public education program under 42 U.S.C. § 12132 and 28 C.F.R. § 35.102(a).

9.     LPS is in Lincoln, Nebraska.   The Parties agree that venue is proper in this district under 28 U.S.C. § 1391(b) because the claim alleged occurred in the District of Nebraska.

10.     The United States is authorized to bring this action and seek remedies for violating Title II.  *See* 42 U.S.C. § 12133; 28 C.F.R. Part 35, Subpart F.

11.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, because it involves claims arising under Title II and is commenced by the United States.

12.     The Court may grant the relief sought in this action pursuant to 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 12133.

## III.     AGREED RESOLUTION

13.     Without admission or adjudication proving any wrongdoing, the Parties agree that it is in the Parties' best interest, and the United States believes that it is in the public interest, to resolve this lawsuit on mutually agreeable terms without further litigation.  Accordingly, the Parties agree to the entry of this Consent Decree without trial or further adjudication of any issues of fact or law raised in the Complaint.

## IV.     GENERAL RELIEF

14.     Under this Consent Decree, LPS will comply with the requirements of Title II, 42 U.S.C. §§ 12131–34, and its implementing regulation, 28 C.F.R. Part 35.   In particular, LPS

   a.     Will not exclude qualified individuals with disabilities from the opportunity to participate in its services, or deny individuals with disabilities the

3

benefits of its services, *see* 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a), (b)(1)(i);

b.    Will afford qualified individuals with disabilities an equal "opportunity to participate in or benefit from any aid, benefit, or service" provided to others, 28 C.F.R. § 35.130(b)(1)(ii);

c.    Will not provide different or separate aids, benefits, or services to individuals with disabilities unless doing so is "necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others," 28. C.F.R. § 35.130(b)(1)(iv);

d.    Will "take appropriate steps to ensure that communications" with individuals with disabilities "are as effective as communications with others," 28 C.F.R. § 35.160(a)(1);

e.    Will provide "appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, an equal opportunity to participate in, and enjoy the benefits of [its] services, programs, or activit[ies]," 28 C.F.R. § 35.160(b)(1); and

f.    Will not "exclude or otherwise deny equal services, programs, or activities to an individual [] because of the known disability of an individual with whom the individual [] is known to have a relationship or association," 28 C.F.R. § 35.130(g).

## V.    SPECIFIC INJUNCTIVE RELIEF

15.    <u>Withdraw Cluster-School Policy</u>: Effective immediately, LPS will not apply a cluster-school policy requiring all deaf or hard of hearing students needing ASL interpretation services to attend a school with other deaf or hard of hearing students

4

("cluster school").[1]  Within thirty days of the Effective Date, defined in Paragraph 25, LPS will offer to convene relevant placement teams, such as an Individualized Education Program team or a Section 504 team, to reconsider the placement of each student previously subject to a cluster-school policy and provide new individualized assessments.[2]  The new assessments must ensure that each student with a disability is provided an equal opportunity to participate in and benefit from LPS's services and is provided with effective communication.   LPS will only place a student in a cluster school if, after an individualized assessment, LPS can demonstrate that the student needs additional support and interventions (other than ASL interpretation) that can be provided only at the cluster school (i.e., that such placement is the student's least-restrictive environment), or if the student's parents/guardians request, or consent to, placement at the cluster school.   LPS shall not be required to offer new placement-team meetings where a student's placement team has, since May 2024, ceased application of the cluster-school policy and has considered a non-cluster-school placement.

16.    If LPS can demonstrate, through the processes set out at 28 C.F.R. § 35.164, that providing a qualified ASL interpreter ("qualified interpreter"), as defined by 92 Neb. Admin. Code § 51-3.18, in a neighborhood school would fundamentally alter the nature of an LPS service, program, or activity, or would result in an undue financial and administrative burden, then LPS is not required to provide a qualified interpreter in a neighborhood school.   However, where a qualified interpreter cannot be provided in a neighborhood school without causing a fundamental alteration or undue burden, LPS

---

[1]For some students, the cluster school location happens to be the student's neighborhood school.  While such students are already attending their neighborhood schools, they may wish to participate in the high school choice program and should be considered for such opportunities by being provided individualized assessments similar to those set described in Paragraph 15.

[2]This Consent Decree does not supplant LPS's other federal and state law obligations regarding the rights of children with disabilities, including the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*.

must take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that, to the maximum extent possible, deaf and hard of hearing students who require a qualified interpreter receive the benefits or services provided by LPS.

17.    For each student who is to be provided a qualified interpreter at a neighborhood school, LPS in consultation with the student's parents/guardians will develop an Interpreter Contingency Plan ("Interpreter Contingency Plan") for what will occur if a qualified interpreter is unavailable for any reason.    The Interpreter Contingency Plan may account for when LPS is experiencing an unplanned short-term qualified interpreter absence or a long-term qualified interpreter vacancy.    The procedures underlying the contingency plan ("Interpreter Contingency Plan Procedures"), will be subject to the United States approval and will go into effect within five days of the Effective Date.

18.    ADA/Non-Discrimination Policy: Within forty-five days of the Effective Date, LPS will adopt and implement a written non-discrimination policy ("ADA/Non-Discrimination Policy"), subject to the United States' approval, that documents the requirements of Title II and its implementing regulation including the obligations to provide equal opportunities to individuals with disabilities and effective communication to individuals who are deaf or hard of hearing.    *See* 42 U.S.C. §§ 12131-34; 28 C.F.R. Part 35.

19.    ADA Coordinator: Within ten days of the Effective Date, LPS will designate an employee to serve as its ADA Coordinator and will provide the name and contact information for that person to the United States.    The ADA Coordinator must be knowledgeable about the ADA's equal-opportunity and effective-communication obligations and the terms of this Consent Decree.    The ADA Coordinator will coordinate LPS's efforts to comply with and carry out its responsibilities under Title II and this Consent Decree and will be responsible for the following:

a.    Overseeing, managing, and coordinating LPS's implementation of this Consent Decree and the ADA/Non-Discrimination Policy;

b.    Tracking, reporting, and documenting that the requirements set forth in this Consent Decree have been met, and, if not, what requirements have not been satisfied, the reasons for any delays in meeting the requirements, and proposals for when the relevant requirements will be met;

c.    Providing the monitoring reports described in Paragraph 22; and

d.    Developing a written reporting procedure for complaints of discrimination or retaliation that relate to this Consent Decree that involve a student with a disability or the parent/guardian of a student with a disability within forty-five days of the Effective Date.   The procedure will include an online complaint form and submission method, a point of contact for receipt of hard copy complaints, and a system for reporting to the ADA Coordinator any complaint related to this Consent Decree received by a school.   LPS will provide the United States with a copy of all complaints that LPS has received as of the implementation date of the written reporting procedure each time it submits a monitoring report under Paragraph 22.   LPS will also provide a copy of LPS's findings and resolution of each complaint.

20.    ADA Training: Within thirty days of the United States' approval of the policy required under Paragraph 18 of this Consent Decree, LPS will submit proposed training materials—including any written or electronic materials that are consistent with the provisions of the approved policy—to the United States for approval, which will not be unreasonably withheld.   Within sixty days of receiving approval from the United States of the training materials, and then annually, LPS will provide training to all relevant staff and contractors concerning: Title II and disability discrimination in general; the ADA obligation to provide effective communication; LPS's revised policy under

Paragraph 18; the roles and responsibilities of LPS's ADA Coordinator; and this Consent Decree, including the steps that LPS has taken, and will continue to take to ensure that its obligations under this Consent Decree are met.

    a.    This training will be conducted by trainer(s) with substantive knowledge of Title II. The United States will set forth reasonable minimum qualifications for the trainer(s). Subject to LPS's good-faith efforts to secure a trainer that meets these minimum qualifications, LPS will send the United States the name(s), qualifications, and contact information of the trainer(s) no later than thirty days after the Effective Date of this Consent Decree. If LPS cannot secure a trainer that meets these minimum qualifications by this date, the Parties will negotiate in good faith to reach a resolution.

    b.    The initial training will be conducted live, either in-person or via remote meeting platform, with an opportunity to pose questions to the trainer(s) at the end of the training session. Each subsequent training may be conducted by video recording. LPS will ensure that all new relevant staff and contractors receive the training as a component of new personnel training.

## VI.    MONETARY DAMAGES

21.    LPS agrees to pay a combined $12,000 to all individuals identified by the United States who suffered compensable damages as a result of LPS's actions ("aggrieved persons"). The United States will provide LPS with the names and total compensation amounts for each aggrieved person. Within 30 days of receiving this information, LPS will send by certified mail to each aggrieved person a copy of the Complaint, this signed Consent Decree, the Release of Claims form, attached as Attachment A, and instructions for how to accept LPS's payment. Upon receipt of an aggrieved person's executed Release of Claims and confirmation that the aggrieved person has completed all necessary steps to receive the LPS's payment, LPS will send

8

their compensation by an electronic funds transfer or by a check sent by certified mail. LPS will provide the United States with verification of each payment within ten days after it is processed or sent via mail. If an aggrieved person submits an executed Release of Claims, properly completes all necessary steps to receive LPS's payment, and requests their compensation from either the United States or LPS at any time during the term of this Consent Decree, LPS will process the appropriate payment.

## VII. MONITORING, REPORTING AND OTHER TERMS

22. <u>Reporting Requirements</u>: Beginning three months after the Effective Date and then every six months, LPS will provide written reports (including supporting documentation) to the United States, delineating all steps taken during the reporting period to comply with each substantive provision of this Consent Decree. Each report will include the following for the preceding reporting period:

    a.    <u>Placement Data</u>: A list of every deaf or hard of hearing LPS student receiving ASL interpretation and for each student, whether they are placed in a cluster school, their neighborhood school, or a choice high school (that is, not their neighborhood school); the reason for placing the student in their current placement, including information about the student's preferred placement, auxiliary aid, or service; and if applicable, the reason(s) for declining to provide the student's preferred placement, auxiliary aid or services.

    b.    <u>Complaints, Requests for Auxiliary Aids of Services, Grievances</u>: A copy of every complaint, request for auxiliary aid or service by a student who is deaf or hard of hearing or the student's parents/guardians, or grievance. For each complaint, request for auxiliary aid or service, or grievance, a copy of the resolution. If a request for an auxiliary aid or service was denied, a written explanation of the denial.

9

c.     <u>Training</u>: For all training required in Paragraph 20, LPS will submit written reports detailing: the date and time of each training; a copy of the agenda and materials (e.g., handouts, PowerPoint presentations) used for each training; and the names and titles of the individuals who attended the training.

d.     <u>All Other Relevant Documents</u>: All other documents requested by the United States relevant to this Consent Decree and to the United States' determination of LPS's ongoing compliance with this Consent Decree.

23.    Unless otherwise instructed by the United States, LPS must send all notices and reports under this Consent Decree electronically to counsel for the United States: Charlotte Lanvers at charlotte.lanvers@usdoj.gov.

24.    The United States may review compliance with this Consent Decree at any time and may move to enforce this Consent Decree if it believes that the Consent Decree, or any requirement of it, has been violated, as long as it first gives notice of such a violation to LPS.   The notice must provide sufficient specificity about the alleged violation so that LPS is readily able to identify and remedy the issue.   LPS must respond to the United States as soon as practicable but no later than ten days after notice is given. This Consent Decree is not violated if LPS remedies the alleged violation within twenty days after receiving a sufficiently specific notice of the alleged violation.   If LPS does not agree to remedy (or does not remedy) the issue within twenty days, the Parties will negotiate in an attempt to resolve any related dispute.   If the Parties cannot reach a mutually acceptable resolution within 20 days, the United States may seek court enforcement of compliance with this Consent Decree.

25.    The Effective Date will be the date that the Court enters the Consent Decree.  Unless otherwise specified, all time periods designated for an action run from the

10

Effective Date.   This Consent Decree will remain in effect for three years from the Effective Date.

26.    This Consent Decree does not purport to remedy any violations or potential violations of the ADA or any other federal or state law, other than the violations alleged in the Complaint, nor does it affect LPS's continuing responsibility to comply with all provisions of the ADA.

27.    This Consent Decree contains the entire agreement between the Parties concerning the subject matter described in the Complaint, and no other statement, promise, or agreement, either written or oral, made by any party or agent of any party, that is not contained in this Consent Decree, and concerns the subject matter described in the Complaint, will be enforceable.

28.    The time frame for completion of any act required by this Consent Decree may be modified with the mutual written consent of the Parties, except that the duration of the Consent Decree itself may be extended only by an order of the Court.   The United States will not unreasonably deny requested extensions, if made by LPS before any deadline, and following LPS's due diligence to meet such a requirement.

29.    If any provision of this Consent Decree is found to be invalid, unenforceable, or otherwise contrary to applicable law, such provision is restated to reflect as nearly as possible and as much as the law allows and its original intent and will not, in any event, affect any other provisions, all of which will remain valid and enforceable as much as the law allows.

30.    This Consent Decree will be binding on LPS, and its subsidiaries, agents, employees, officers, and contractors.   If LPS seeks to transfer or assign all or part of its interest in any service covered by this Consent Decree, and the successor or assign intends on carrying on the same or similar use of its educational services, then as a condition of transfer or sale, LPS will obtain the written accession of the successor or

11

assign to any obligations remaining under this Consent Decree for the remaining term of this Consent Decree.

31.    Failure by the United States to seek enforcement of this Consent Decree under its terms with respect to any instance or provision will not be construed as a waiver to such enforcement with regard to any instances or provisions.

32.    The Parties agree that, as of the Effective Date, litigation is not reasonably foreseeable concerning the allegations in the Complaint.   To the extent that any of these parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the allegations in the Complaint, the Party is no longer required to maintain such a litigation hold.   Nothing in this Paragraph relieves any party of any other obligations imposed by this Decree.

33.    For provisions that require the approval of the United States, LPS will submit its proposal ten days before the deadline set forth in this Consent Decree.   The United States will timely respond to proposals submitted by LPS and will not unreasonably withhold approval.

IT IS SO ORDERED.

Dated this 11th day of September 2024.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge